UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE A. DROGOWSKI,                     Case No. 10-12080

          Plaintiff,               Marianne O. Battani
v.                                       United States District Judge

COMMISSIONER OF                          Michael Hluchaniuk
SOCIAL SECURITY,                         United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 20)**

## I.      PROCEDURAL HISTORY

### A.      Proceedings in this Court

On May 24, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O.

Battani referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 2).  This matter is currently before the Court

on cross-motions for summary judgment.  (Dkt. 17, 20).

### B.      Administrative Proceedings

Plaintiff filed the instant claims on February 14, 2005, alleging that she

became unable to work on December 23, 2004.  (Dkt. 9, Tr. at 452).  The claim

was initially disapproved by the Commissioner on May 10, 2005.  (Dkt. 9, Tr. at

447-451).  Plaintiff requested a hearing and on January 15, 2008, plaintiff

appeared without counsel before Administrative Law Judge (ALJ) Bennett S.

Engelman, who considered the case *de novo*.  In a decision dated February 19,

2008, the ALJ, adopted the residual functional capacity as found by the ALJ who

decided plaintiff's claim for an earlier period, and found that plaintiff was not

disabled.  (Dkt. 8, Tr. at 380-388).  Plaintiff requested a review of this decision on

March 4, 2008.  (Dkt. 9, Tr. at 379).  The ALJ's decision became the final decision

of the Commissioner when, after the review of additional exhibits[1] (AC-1 , Dkt. 8,

Tr. at 300-312), the Appeals Council, on May 10, 2010, denied plaintiff's request

for review.  (Dkt. 9, Tr. at 336-338); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

　　　　For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment and to remand be **DENIED**, that the

Commissioner's motion for summary judgement be **GRANTED**, and that the

findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 45 years of age at the time of the most recent administrative

hearing.  (Dkt. 10, Tr. at 764).  Plaintiff's relevant work history included

employment as a bookkeeper, a clerk, and an office manager.  (Dkt. 9, Tr. at 483).

In denying plaintiff's claims, defendant Commissioner considered fibromyalgia as

a possible bases of disability.  (Dkt. 9, Tr. 385).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that claimant last met the insured status requirements on

December 31, 2005.  (Dkt. 9, Tr. at 384).  At step two, the ALJ plaintiff had not

engaged in substantial gainful activity during the period from her alleged onset

date of December 23, 2004 through her date last insured of December 31, 2005.

(Dkt. 9, Tr. at 385).  At step three, the ALJ found that plaintiff's chronic pain

syndrome is a "severe" impairment within the meaning of the second sequential

step.  *Id.*  At step four, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 9, Tr. at

386).  At step five, the ALJ found that plaintiff had the residual functional

capacity to perform light work. *Id.* At step six, the ALJ found that through the date last insured, the claimant's past relevant work as a bookkeeper did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (Dkt. 9, Tr. at 388).

### B.   Plaintiff's Claims of Error

In concluding that plaintiff was not disabled, the ALJ contended that "there has been no 'new or material' evidence submitted with the new application filed on February 14, 2005 other than primarily a 'sworn statement' of Allan G. Clague, M.D. … In most other legal systems this case would be resolved by a finding of res judicata." (Tr. 383). According to plaintiff, the ALJ's treatment of "new or material" evidence in the current record is contrary to the Commissioner's AR 98-4(6) and HALLEX I-5-4-62 (Implementation of the Drummond Acquiescence Ruling). More specifically, plaintiff asserts that the ALJ failed to properly evaluate and articulate the reasons for the weight given to the medical opinions of Drs. Lazzara and Clague – "new and material evidence" under AR 98-4(6) and HALLEX I-5-4-62.

According to plaintiff, the policy of the SSA is that, if a determination or decision on a disability claim has become final, SSA may apply administrative res judicata with respect to a subsequent disability claim if the same time period, parties, facts and issues are involved in both the prior and subsequent claims.

However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated on the prior claim, plaintiff contends that the SSA considers the issues of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata.  *Id*.  Plaintiff argues that the current record includes not only "evidence that was not before the ALJ who made the decision on the prior claim," but also "testimony that was not presented in the proceedings before the prior ALJ."  Further, due to the presence of "new and material" evidence requiring new findings of plaintiff's RFC, the ALJ was required to follow the regulations and rulings with respect to the determination of new RFC findings. Plaintiff contends that the ALJ erred by never referring to AR 98-4(6) and HALLEX I-5-4-62 in his decision.  By concluding that the only new and material evidence was Dr. Clague's sworn testimony, plaintiff says that the ALJ ignored the fact that Dr. Lazzara's medical opinion was also "new and material evidence" and failed to articulate what weight was given to Dr. Lazzara's opinion and reasons for that weight.

Plaintiff underwent a consultative examination by Dr. Lazzara on April 19, 2005 at the behest of the State agency.  (Tr. 659).  Dr. Lazzara opined: "She had objective reproducible hyperreflexia today with diminished power distally to proximally.  I cannot rule out whether this is Lou Gehrig's disease or other

demyelinating process. I cannot rule out whether this is multiple sclerosis or muscular dystrophy." (Tr. 663). According to plaintiff, Dr. Lazzara's consultative examination report is clearly "new" evidence because it was "evidence that was not before the ALJ who made the decision on the prior claim." Moreover, it is also "material" evidence because Dr. Lazzara–an examining doctor retained by the State agency–opined that Plaintiff had "objective reproducible hyperreflexia," inter alia, which was objective evidence supporting Dr. Clague's opinion of plaintiff's neurological disorder, even though the specific diagnosis could not yet be ascertained.

Instead of articulating whether or not Dr. Lazzara's opinion was "new and material" evidence pursuant to the Commissioner's own HALLEX and then articulate the reasons for the weight given to this medical opinion pursuant to the regulations, the ALJ merely mentioned Lazzara's report and dismissed Dr. Lazzara's opinion by stating: "If as suspected by Dr. Lazzara that claimant may have a serious neurological disorder it seems that Dr. Clague or another treating physician should have ruled out those disorders. Based on Dr. Clague's statement, there are no abnormalities to be found on such tests and we are left with the same evidence as the prior claim." (Tr. 388).

According to plaintiff, the ALJ's dismissal of Dr. Lazzara's opinion was based on not only the ALJ's impermissibly "playing doctor" and the ALJ's

misrepresentation of Dr. Clague's statement, but also the ALJ's erroneous application of AR 98-4(6) and HALLEX I-5-4-62. First, even if Dr. Clague had ruled out Lou Gehrig's disease and multiple sclerosis, it does not prove that plaintiff does not have a serious neurological disorder similar to Lou Gehrig's disease or multiple sclerosis. Plaintiff argues that what Dr. Lazzara found was significant "objective" findings that resulted in Dr. Lazzara's conclusion that plaintiff may have a serious neurological disorder such as Lou Gehrig's disease or another demyelinating disorder. (Tr. 663). Thus, contrary to the ALJ's assertion, the mere fact that Dr. Clague may have ruled out Lou Gehrig's disease or multiple sclerosis, or the fact that the doctors were unable to pinpoint a specific diagnosis does not necessarily mean that there was no objective evidence supporting plaintiff's symptoms or that her symptoms were "not credible."

Plaintiff also argues that the ALJ erred by essentially rejecting Dr. Clague's sworn testimony by asserting that Dr. Clauge's opinion contained in the prior record had already been rejected by the prior ALJ, and that Dr. Clague's sworn testimony provided "nothing different." (Tr. 387). According to plaintiff, this is incorrect because the first ALJ rejected Dr. Clague's opinion contained in the prior record on the basis that he was unable to diagnose plaintiff or recommend a course of treatment, and that Dr. Clague described a definite improvement when plaintiff presented to him for the second time. (Tr. 744). According to plaintiff, the ALJ

cannot rely on the prior ALJ's reasons for rejecting Dr. Clague's opinion, because

Dr. Clague's 45-page sworn testimony (Tr. 505-545) is new evidence, and the

prior ALJ did not have the benefit of reviewing the sworn statement. Thus,

plaintiff posits, the prior ALJ's rationale for rejecting Dr. Clague's opinion should

be limited to the prior ALJ's review of the prior record only, and cannot be a

reasonable basis for the current ALJ's rejection of Dr. Clague's sworn testimony.

Moreover, contrary to the ALJ's contention that it provided "nothing different"

than the prior record, Dr. Clague's testimony explained several aspects of his

examination findings and clarified the misunderstandings apparent in the prior

ALJ's interpretation of his statements in the prior record. Dr. Clague's sworn

testimony not only shed light on the complex etiology and symptomology of

plaintiff's neurological disorder but also explained what he meant by

"improvement" in his second examination of plaintiff.  Dr. Clague's sworn

testimony also explained the reasons for the difficulty in pin-pointing a specific

diagnosis and explained the significance of certain objective clinical tests which a

"lay person" may otherwise dismiss as immaterial or insignificant due to the

complexity of neurological disorders.  Therefore, plaintiff concludes, the ALJ's

reliance on the prior ALJ's rationale and the ALJ's contention that Dr. Clague's

sworn testimony contained "nothing different" than the prior record were clearly

erroneous.

C.     Commissioner's Motion for Summary Judgment

Plaintiff criticizes the ALJ's treatment of Dr. Clague's statement and Dr. Lazzara's report.  However, according to the Commissioner, substantial evidence shows the evidence did not "warrant[] a finding different than that made in the decision on the prior claim," as required for it to be material. HALLEX I-5-4-62. Specifically, the Commissioner argues that Dr. Clague's statement was merely cumulative, given that the doctor admitted that plaintiff's 2005 examination did not differ in any significant way from her 2003 report, which was before ALJ Blair at the time of his decision.  (Tr. 514-15).  According to the Commissioner, the "sworn statement," simply recounts material already contained in the 2001 and 2003 treatment notes, both of which were considered by ALJ Blair.  The note with more significant neurological findings - the 2001 note - was also available to the state agency physician, Dr. Tanna, when he conducted his review of the evidence in October 2001.  (Tr. 251).  And, in 2001, Dr. Clague noted differences in plaintiff's corneal reflexes (Tr. 224) and abnormalities in the deep tendon reflexes (Tr. 225).  Further, Dr. Clague made his diagnosis of a chronic pain disorder with "motor, sensory, and reflex changes as part of the clinical syndrome" at that time. (Tr. 225).  And, while Dr. Clague stated in 2007 that his finding of "improvement" did not mean plaintiff was not disabled, his note in 2003 already made clear his opinion that despite her improvement plaintiff would likely be disabled for life.

(Tr. 294).  He even discussed plaintiff's improvement in the same paragraph as he stated she was still disabled.  (Tr. 294).  The Commissioner also points out that ALJ Blair's reading of the evidence has already been affirmed by this Court.  In the end, Drs. Al-Shathir, Dowd, and Tanna all expressly stated that plaintiff's impairments did not prevent her from working.  (Tr. 138, 228, 245).  Nothing in Dr. Clague's statement undermines ALJ Blair's reliance on the opinions of these doctors.  Further, Dr. Clague admitted that his 2005 examination did not provide any new significant findings.  (Tr. 514-15).  The earlier case before ALJ Blair involved the conflicting opinions of doctors, some of whom thought plaintiff could work and was overly dramatic if not creating her illnesses, and others of whom (including Dr. Clague) believed she was disabled.  According to the Commissioner, merely because Dr. Clague reiterated his opinion at length under questioning from plaintiff's counsel does not change this calculus.  Thus, the Commissioner urges the Court to conclude that ALJ Engelman was justified in finding that his statements were cumulative to what was in the record before ALJ Blair.

    The Commissioner also argues that Dr. Lazarra's findings were also cumulative.  Several doctors in the earlier record observed muscle weakness (Tr. 115, 294) and gait abnormalities.  (Tr. 290, 294).  Problems with the deep tendon reflexes (which include the ankle reflex) were discussed in 2001.  (Tr. 225).

Report and Recommendation
Cross-Motions for Summary Judgment
*Drogowski v. Comm'r*; Case No. 12080

Plaintiff avoids addressing the unexceptional findings that Dr. Lazarra made, such as only modest decreases in two bilateral ranges of motion with the remainder being normal.  (Tr. 661-62), a negative Romberg's sign, and intact sensation to pinprick and light touch.  (Tr. 662).  The Commissioner points out that these findings are actually improvements on findings in the previous record.  (Tr. 291, 294).  According to the Commissioner, that leaves an abnormal reflex finding in plaintiff's ankles and a finding of hypertonicity (increased muscle tension) in the feet, presumably the basis for the internist's speculation that plaintiff might have various neurological disorders such as Lou Gehrig's disease.  (Tr. 663).  But as the ALJ noted, all the doctors who had examined Plaintiff up to that point had not felt it necessary to investigate these diagnoses.  (Tr. 387).  Nor is there evidence that these findings were followed up; indeed the record before the ALJ does not speak of any further medical treatment after 2005.  The record thus suggests that plaintiff's doctors either did not agree with Dr. Lazarra's findings or did not find them relevant.

After considering the evidence of record, ALJ Engleman determined that plaintiff's complaints were not fully credible.  (Tr. 387).  Plaintiff attacks this finding, arguing that the ALJ merely copied ALJ Blair's credibility finding. However, the Commissioner asserts that the ALJ's decision clearly shows that he "consider[ed] the evidence in the file even though it is not different than [the

evidence] in the previous file except in [a] few instances." (Tr. 387). ALJ Engleman then went on to discuss that evidence for several paragraphs, concluding that "we are left with the same evidence as the prior claim." (Tr. 388). The Commissioner acknowledges that plaintiff is correct that AR 98-4(6) and HALLEX I-5-4-62 do not require an ALJ to make the same credibility finding as a previous ALJ. This is because the credibility finding is of "subordinate" rank, being important only insofar as it affects the determination of the RFC. The RFC, in contrast, is a required finding under AR 98-4(6) and HALLEX I-5-4-62. The second ALJ must find the same RFC in the absence of new and material evidence. Thus, "[t]he question of making a 'subordinate' finding regarding credibility only arises when there is such new and material evidence or changes in legal requirements." HALLEX I-5-4-62. Without one of those prerequisites, the Commissioner asserts that it would make no sense to make a new credibility finding, because the RFC, which is the object of the credibility finding, could not change.

Plaintiff cites the *Drummond* doctrine to assert the ALJ should have found plaintiff had a moderate limitation in concentration, persistence, or pace instead of a mild one. This conclusion is not correct according to the Commissioner because AR 98-4(6) applies only to "disability findings," not to subordinate findings, the very point on which plaintiff relies to support her argument concerning credibility.

But, according to the Commissioner, HALLEX I-5-4-62 provides that the disability finding at step three is whether a claimant's "impairment(s) meets or equals a listed impairment." It says nothing to support plaintiff's assertion that an ALJ must make the same findings as the previous ALJ on the subordinate question of the intensity of problems with concentration, persistence, or pace. Thus, the Commissioner concludes, with AR 98-4(6) inapplicable, ALJ Engleman could readily accept the conclusion of state agency psychologist Dr. William Schirado that Plaintiff had only mild difficulties in concentration, persistence, or pace. (Tr. 677). In any event, both ALJs fully agreed that plaintiff's impairment did not meet or equal any Listing, and thus the second ALJ's decision is consistent with AR 98-4(6) and HALLEX I-5-4-62.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc.

Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

  B.   Governing Law

  The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

Report and Recommendation
Cross-Motions for Summary Judgment
*Drogowski v. Comm'r*; Case No. 12080

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis

Generally, principles of *res judicata* require that the administration be bound by this decision unless a change of circumstances is proved on a subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6), issued post-*Drummond*, instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding... ." The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed

circumstances requiring review." *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

Contrary to plaintiff's assertion, under *Drummond*, a change in the period of disability alleged does not preclude the application of *res judicata*. *Slick v. Comm'r of Soc. Sec.*, 2009 WL 136890, *4, citing, *Drummond*, 126 F.3d at 839. The change in the alleged disability period does not affect the application of *res judicata* where the issue (whether plaintiff's condition disables her and/or to what degree), is the same. *Slick*, at *4. Plaintiff must show that circumstances have changed since the first hearing before the ALJ "by presenting new and material evidence of deterioration." *Id*. at *5.

Plaintiff misapprehends the scope of this test. Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at the time the ALJ made the decision. *See e.g.*, *Casey v. Sec. of Health and Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993) (*per curiam*) (holding that where the Secretary already denied a claimant's application for one period, the claimant then must show that "her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity"); *Priest v. Soc. Sec. Admin.*, 3 Fed.Appx. 275, 276 (6th Cir. 2001) ("In order to be awarded benefits for her condition since that time, Priest must demonstrate that her condition has so

worsened in comparison to her condition in September 1994 that she was unable to perform substantial gainful activity."); *Haun v. Comm'r of Soc. Sec.*, 107 Fed.Appx. 462, 463-64 (6th Cir. 2004). The Ninth Circuit, in agreement with the Sixth Circuit, calls this the "presumption of continuing non-disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

In this case, plaintiff's "new and material" evidence does not establish that her condition *worsened* during the new time period. Rather, it shows that the nature of plaintiff's condition may have been mis-diagnosed during the prior claim period. Plaintiff does not even attempt to show that her condition or symptoms worsened after the first ALJ's decision. Rather, her entire argument, at its core, is focused on how the first ALJ's decision was incorrectly decided because he misinterpreted the evidence, as confirmed by Dr. Clague. Even if true, this is precisely the type of claim that is barred by *res judicata*. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *Baklema v. Comm'r*, 2011 WL 2601479 (W.D. Mich. 2011), quoting, *McKenzie v. Commissioner of Social Security*, 2000 WL 687680 at *5 (6th Cir. 2000), citing, *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). While the evidence post-dates the first decision,

nothing in Dr. Clague's opinions or Dr. Lazzara's opinions shows a *worsening* of plaintiff's condition or symptoms. Rather, they merely present a possible clarification of the origin (entirely neurological, as opposed to rheumatological and neurological) of plaintiff's conditions and symptoms. This is simply insufficient under *Drummond*. Thus, the undersigned concludes that the ALJ properly applied *res judicata* and that substantial evidence supports his decision. Given this conclusion, the remaining arguments, which are dependent on a finding that new and material evidence was presented, need not be addressed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment and to remand be **DENIED**, that the Commissioner's motion for summary judgement be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 12, 2011                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Drogowski v. Comm'r*; Case No. 12080

## **CERTIFICATE OF SERVICE**

I certify that on July 12, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Frederick J. Daley, Jr., Evan A. Zagoria, Judith E. Levy, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Drogowski v. Comm'r*; Case No. 12080